UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 17-135** |
| | * | |
| v. | * | **SECTION: "F" (5)** |
| | * | |
| **CRAIG A. TAFFARO** | * | |
| | * | |
| | * | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Some tax cases call for harsh punishments, such as those relating to hardened criminals, organized crime figures, drug kingpins, Ponzi schemers, or corporate robber barons. This is not one of those cases.

Craig Taffaro is 70 years old. He had a distinguished career in law enforcement spanning 49 years. He is a veteran of the United States Army. He has been deeply involved with a children's cancer charity for the last 27 years. He has received numerous letters of support from those who know and love him. He suffers from numerous physical maladies and requires a variety of prescription medications. He is the sole caretaker for his wife, Judy.

He is a first-time, nonviolent offender with no risk of recidivism who presents no threat to society and whose very public trial and conviction has resulted in significant shame and embarrassment.

Mr. Taffaro was *never* given an opportunity to address his tax issues civilly through an audit. Instead, the federal government pursued Mr. Taffaro with an extraordinary vigor wholly disproportionate to the conduct involved. The government pursued this case at a cost to the public

that exceeds the government's original 2009–2013 tax loss calculation of $62,177[1] by several orders of magnitude.

The government always insisted that Mr. Taffaro plead guilty to a felony crime and accept its computation of tax loss when neither he or his counsel considered his actions to be willful nor considered the government's figures to be accurate. The government insisted, for example, that the $100,000 in taxes and penalties *he paid in full* for 2014 approximately a year before he was indicted be included in the tax loss computations.

Under those circumstances, Mr. Taffaro could not plead to what he did not believe to be true. Mr. Taffaro contends that the appropriate tax loss is $35,000, of which he has made a deposit to the IRS of $25,192, leaving a balance of $9,318.

Again, Mr. Taffaro concedes that he was careless, tardy, and sloppy with his taxes. However, he does not deserve punishment at a level anywhere near what the government seeks to mete out.

This Court has the solemn obligation to impose a sentence that is *sufficient*, but *no greater than necessary*, to achieve the purposes of 18 U.S.C. § 3553. Here, the purposes of § 3553 can be achieved without incarceration, and so any sentence of incarceration would necessarily *exceed* that which is sufficient. Craig Taffaro humbly requests that this Court impose a sentence without incarceration.

---

[1] *See* government's Bill of Particulars dated September 15, 2017, attached as Exhibit "A."

## DISCUSSION

I. **The Presentence Investigation Report (PSIR) erred in calculating a total offense level of 18.**

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, the defense reasserts and maintains its objections to the PSIR and disputes the suggested offense level of 18. *See* Doc. 133 pp. 45–56. First, a large portion of the offense level is based on the purported "tax loss" to the government, which is an open subject of dispute. The probation officer has routinely ignored the opinions of the defense's tax experts while accepting all of the government's monetary figures at face value. Indeed, even after this Court entered a judgment of acquittal as to Count 11, the probation officer made no adjustment to the calculated tax loss. The probation officer further acknowledged that an "evidentiary hearing may be necessary to support the hearsay information relied on by the probation officer" in calculating the tax loss. Doc. 133 p. 31.

The defense is ready, willing, and able to call its forensic accountants to testify at sentencing and explain their well-supported findings.

   A. **The PSIR erred in including unsubstantiated "additional relevant conduct."**

In order to inflate the tax loss attributable to Taffaro, the PSIR seeks to incorporate "additional relevant conduct" based on wholly unsubstantiated claims relative to the defendant's business deductions for tax years 2002–2008. Doc. 133 ¶¶ 42–48. First, the PSIR has failed to prove, by a preponderance of the evidence, that any of these deductions were improper. *See United States v. Phelps*, 478 F.3d 680, 682-83 (5th Cir. 2007). Indeed, the PSIR offers no evidence whatsoever of impropriety; rather, it simply plucks dollar amounts off old tax returns and declares them to be part of a "tax loss." Moreover, as best as the defendant can determine, the 2002–2008 numbers appear to be Mr. and Mrs. Taffaro's entire *deductions* for their law enforcement-related

expenses, not a reflection of the taxes due and owing (which would only be a calculated percentage of the deductions). The PSIR provides no accounting to support its calculation of the tax loss attributable to this conduct. Second, the evidence fails to establish that this conduct is "relevant" to anything in the principal case. From the outset of this matter, the government has clearly stated that this case relates to CTNN and its associated business expenses. Because CTNN did not exist between 2002 and 2008, those years are not relevant to the conduct at issue in this case.

**B.    The PSIR did not amend the total loss amount despite a judgment of acquittal on Count 11.**

The draft PSIR, which was served on the parties on March 7, 2018, calculated a total loss amount of $213,717.28. Doc. 114 ¶ 48. On March 22, 2018, this Court entered a judgment of acquittal on Count 11 of the Superseding Indictment. Doc. 131. On March 28, 2018, the probation office issued the final PSIR, which once again calculated a total tax loss amount of $213,717.28. Doc. 133 ¶ 49. The failure to make any change to the total loss amount following the judgment of acquittal raises serious questions about the probation office's computation methods and accuracy.

**C.    This Court should accept the tax loss figures provided by Mr. Taffaro's forensic accountants or, at the very most, by the government in its September 15, 2017 bill of particulars.**

In order to assess the appropriate tax loss, this Court should disregard the mysterious numbers found within the PSIR and instead adhere to the well-supported figures offered by the defense's forensic accountants. In contrast to the government's kitchen sink calculation method, the defense's experts carefully combed through Mr. Taffaro's financial records to identify valid, documented business expenses which must be excluded from the tax loss calculation. After completing the accounting legwork that the government was unwilling to perform, the defense's forensic experts determined that the total tax loss was no greater than $35,000. This estimate of tax loss is bolstered by the government's own (slightly higher estimates) provided to the defense

on September 15, 2017, which assessed a total tax loss of $62,177 (excluding tax year 2014, for which this Court entered a judgment of acquittal). It is inconceivable that the government could go from a $62,177 estimate before trial to an over $200,000 estimate after trial. This Court should reject the government's newly issued and heavily inflated tax loss figures in favor of those provided by the defense, or even those provided initially by the government.

### D. The PSIR errs in applying an obstruction of justice enhancement.

The PSIR attempts to impose a two-level enhancement on Taffaro based on his in-court testimony, to wit: his denial that he acted willfully; his statement that he thought he could claim mileage in his JPSO vehicle; and his statement that he thought he could deduct certain cruise expenses. Doc. 133 ¶¶ 52–54. The defense objects to this enhancement.

Regardless of the PSIR's recommendation, "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993).

> Of course, not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury. As we have just observed, an accused may give inaccurate testimony due to confusion, mistake, or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress, or self-defense. Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.

*Id.*

Each of the "obstruction" examples cited by the PSIR relates not to testimony about objective facts, but rather, to subjective testimony about what Taffaro believed. Taffaro testified that he believed he had not willfully evaded taxes; that he believed he could deduct mileage for his JPSO vehicle because he paid a fee to use the vehicle; and that he believed he could deduct the costs of his Alaskan cruise because he pursued business interests on the trip. The jury's verdict

does not mean that his testimony was untruthful; it simply means that the jury found it insufficient to excuse criminal liability or to prove that he lacked the intent to evade taxes. The PSIR argues that Taffaro's statements were false because Pat Sharp gave him conflicting advice. Yet Mr. Sharp's advice to Mr. Taffaro was apparently given orally at an unknown time, and Mr. Sharp acknowledged under oath that the rules regarding deductions could be complicated, for instance, when the defense asked Mr. Sharp whether Taffaro could deduct the miles of his JPSO vehicle up to the amount that he paid for the use of the vehicle. It is thus very reasonable to believe that Taffaro's testimony was the result of "confusion, mistake, or faulty memory" rather than a deliberate attempt to mislead. This Court should make its own determination that Taffaro did not seek to obstruct justice through his testimony.

**II.     A downward departure is warranted under § 5H1.1 (Age) and § 5H1.4 (Physical Condition) of the Sentencing Guidelines.**

As stated by the Guidelines, "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." U.S.S.G. § 5H1.1. Age is also related to physical condition, which may be considered "in combination with other offender characteristics." *Id.*; *see id.* § 5H1.4.

Here, a downward departure based on Taffaro's combined age and physical condition is warranted. Taffaro is 70 years old. His father died at the age of 68, and his brother died at the age 62. Taffaro's personal physician, Donald L. Peterson, M.D., states that he currently suffers from the following conditions: coronary artery disease; hypertension; degenerative disc disease; diabetes mellitus (type II); vitamin D deficiency; hypothyroidism; peripheral neuropathy; and

obstructive sleep apnea.[2] Taffaro previously underwent coronary artery bypass surgery, pituitary gland tumor surgery, and a gastric sleeve procedure. According to Dr. Peterson, Taffaro has "numerous complex medical conditions" that would be "hard to treat in an incarcerated setting." All of these factors warrant against incarceration. First, any term of incarceration could effectively amount to a life sentence for Taffaro, who has already outlived his closest male relatives. Second, incarceration will be costly and inefficient for the government, which will be burdened with addressing Taffaro's extensive medical needs. Finally, home confinement would provide an appropriate and less costly alternative to incarceration. It would meet the government's punitive goals by severely restricting Taffaro's liberty while also alleviating the government of the obligation to provide expensive medical care. For these reasons, this Court should grant a downward departure to a lower guidelines range.

### III. A variance is warranted under 18 U.S.C. § 3553.

In determining a sentence, this Court must consider all factors under 18 U.S.C. § 3553(a). *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011). This Court is "not bound by the Sentencing Guidelines," *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015), and "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Rather, this Court, being in a "superior position to find facts and judge their import under § 3553(a)," must "make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50–51. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

---

[2] Attached as Exhibit "B."

A.   **The history and characteristics of Taffaro warrant a variance.**

As noted above, Taffaro's advanced age and numerous medical conditions are sufficient to warrant against any term of incarceration. This Court should also consider Taffaro's role as caretaker for his wife Judy, who suffers from her own medical conditions. Numerous other personal characteristics further justify a variance from the Guidelines range. First—as has been well-established by the evidence—Taffaro served with distinction as a law enforcement officer for 49 years. His contributions to the community in this capacity are immeasurable. Taffaro so loved, and was so committed to his job, that he continued to work for ten years after reaching full-retirement eligibility. Taffaro also has a long history of charitable contributions to his credit. For over 27 years, he has participated in the Sunshine Kids charity for children with cancer. In this role, Taffaro and his wife coordinated numerous trips to New Orleans for young cancer patients, and Taffaro hopes to continue his participation in this charity in the future. The best indicator of Taffaro's character and contributions, however, comes in the form of the voluminous personal statements submitted to this Court by his supporters. These statements speak more eloquently than any defense counsel ever could in supporting a variance based on Taffaro's history and characteristics.

B.   **A sentence to home confinement or probation meets the goals of § 3553.**

Although the prosecutor will likely argue for incarceration, there is no objectively identifiable reason why home confinement and/or probation would not satisfy § 3553 in this case. First, Taffaro is already experiencing punishment for his offenses. As a prominent law enforcement official in the local community, his case and conviction were covered by major media outlets, resulting in devastating public humiliation. Taffaro will spend many years paying his financial debts to the U.S. government. There is no reason to believe that the avoidance of incarceration would be viewed as a "windfall"; indeed, Taffaro has been forever changed by this

experience, and he and his family will continue to suffer the consequences for the remainder of his life. There is no plausible risk that Taffaro will reoffend, and he poses no danger to the community. Taffaro has fully complied will all pretrial supervision requirements since July 28, 2017, and he will fully comply with the terms of home confinement or probation. *See* Doc. 133 p. 22.

### C. Other courts have imposed home confinement for similarly situated defendants.

18 U.S.C. § 3553(a)(6) counsels a court to consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; indeed, such consistency is critical to public confidence in our justice system. Thus, this Court should look to similarly situated defendants when considering an appropriate sentence. The following cases are instructive:

- *United States v. Lindebaum*, 1:17-CR-00106 (S.D.N.Y. Jan. 11, 2018). Defendant Herbert Lindebaum, 79 years old, engaged in a 14-year course of tax evasion and was convicted in federal court. The Guidelines called for a sentence of 30–37 months in prison (offense level 19), but concerns about the defendant's cardiac health led the district court to impose home confinement rather than incarceration.[3]

- *United States v. Roberts*, 2:17-CR-00140 (D.N.J. Jan. 11, 2018). Defendant Richard Roberts, 80 years old, was convicted of tax evasion. At sentencing, the defense noted that the accused suffered from hypertensive chronic kidney disease and sleep apnea, and that prison facilities were ill-equipped to treat him. The prosecutor (predictably) argued that home confinement was "not enough for just punishment and for general deterrence." The district court rejected the prosecutor's argument for imprisonment, noting that the defendant had led a notable life that "deserve[d] some leniency."[4]

- *United States v. Samson*, 2:16-CR-00334 (D.N.J. March 6, 2017). Defendant David Samson, 77 years old, was convicted of bribery. Prosecutors argued for a sentence of two years in prison. The district court rejected this argument. In imposing a sentence of home

---

[3] *See Tax-Dodging Med Mal Lawyer Ducks Prison Due to Weak Heart*, Law360 (Jan. 11, 2018), https://www.law360.com/articles/1001095/tax-dodging-med-mal-lawyer-ducks-prison-due-to-weak-heart.

[4] *See NJ Atty Of Movie Fame Gets Home Confinement In Tax Case*, Law360 (Jan. 11, 2018), https://www.law360.com/articles/1001070/nj-atty-of-movie-fame-gets-home-confinement-in-tax-case.

{N3573629.1}  9

confinement, the district court "pointed to Samson's age and health"; his lifetime of public service; and the many letters of support submitted in his support.[5]

- *United States v. Graves*, 1:16-CR-00114 (D.D.C. Oct. 26, 2016). Defendant Warren Graves, 74 years old, was convicted of filing false tax returns. Prosecutors argued for prison time but recognized Graves's "advanced age" and acknowledged that Graves suffered from heart problems. The district court imposed home confinement.[6]

- *United States v. Hollnagel et al.*, 1:10-CR-00195 (N.D. Ill., Jan. 7. 2014). Defendant Brian Olds, 71 years old, convicted of bribery, suffered from diabetes and also served as caretaker to his ailing wife. The prosecutors sought a sentence of 27 months, but the district court imposed home confinement, finding that the defendant's crimes were "not reflective of the life" he had lived.[7]

A sentence of home confinement or probation in this case would be consistent with 18 U.S.C. § 3553(a)(6). Like many of the above-listed defendants, Taffaro is elderly and suffers from numerous health problems, including heart problems. He led an exemplary life with decades of public service prior to this incident, and his conviction for these tax offenses is not reflective of his life as a whole. He has numerous letters of support from members of this community. In consideration of these facts and circumstances, a sentence of home confinement or probation is appropriate.

### D. The government's failure to offer a civil disposition undermines any argument about general deterrence.

Given the lack of any other factors supporting incarceration in this case, the prosecutor will likely turn to the old saw of "general deterrence"—namely, the unsupported claim that a sentence

---

[5] *See Ex-NJ AG Avoids Prison In Airline Bribery Plot*, Law360 (March 6, 2017), https://www.law360.com/articles/898434?scroll=1.

[6] *See DC Official Gets 1-Year House Arrest For Fudging Taxes*, Law360 (Oct. 26, 2016), https://www.law360.com/articles/855546/dc-official-gets-1-year-house-arrest-for-fudging-taxes-.

[7] *See Ex-Aviation Co. Exec Avoids Prison For BCI Bribes*, Law360 (Jan. 7, 2014), https://www.law360.com/articles/499283/ex-aviation-co-exec-avoids-prison-for-bci-bribes.

of incarceration—and *only* incarceration—will deter hypothetical would-be tax evaders of the future.  The government's own actions (or inaction), however, demonstrate that a criminal prosecution was never necessary in this case.  Indeed, there was no question that Taffaro had struggled with his tax obligations for many years, and that the IRS was aware of these struggles.  Despite evidence of levies and requests for installment plans dating to 2014, the IRS never conducted a civil audit of Taffaro's returns and never allowed him an opportunity to remedy his debts through civil avenues.  Had they done so, these issues could have been resolved long ago, and at considerably less expense to all parties.  Thus, any argument from the government about general deterrence rings hollow.  Rather, the most effective method of general deterrence is for the IRS to simply work with delinquent taxpayers at the first signs of trouble—something that the IRS failed to do here.  Additionally, given the relatively meager tax loss to government in this case, there should be little concern that a sentence to home confinement or probation would somehow embolden the type of "big fish" tax evaders that the government would (or should) normally focus on.

## CONCLUSION

Based on all of the foregoing, Craig Taffaro respectfully requests that this Court grant a departure and/or variance from the Guidelines and impose a sentence without incarceration.

Respectfully submitted,

*/s/ Michael W. Magner*
Michael W. Magner, 01206
John R. Guenard, 36483
JONES WALKER LLP
201 St. Charles Ave. Ste. 5100
New Orleans, LA 70170-5100
(504) 582-8000
mmagner@joneswalker.com
jguenard@joneswalker.com

*Counsel for Defendant Craig A. Taffaro*

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, this 2nd day of April, 2018.

                                                                */s/ Michael W. Magner*